**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

| | | |
|---|---|---|
| ALLIED FEDERATION, BROTHERHOOD OF | ) | |
| MAINTENANCE OF WAY EMPLOYEES | ) | **Civil Action** |
| DIVISION OF INTERNATIONAL BROTHERHOOD | ) | **No.** 3:21-cv-13-CRS |
| OF TEAMSTERS, | ) | |
| Plaintiff, | ) | **VERIFIED COMPLAINT** |
| | ) | |
| vs. | ) | |
| | ) | |
| CSX TRANSPORTATION, INC., | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

1.      Plaintiff Allied Federation, Brotherhood of Maintenance of Way Employees Division of International Brotherhood of Teamsters ("Plaintiff" or "BMWE-Allied Federation") brings this action against Defendant CSX Transportation, Inc. ("Defendant" or "CSXT") pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-163.

2.      Plaintiff seeks declaratory and injunctive relief against CSXT to remedy CSXT's unlawful alteration of the RLA's status quo requirement by having unilaterally imposed new terms and conditions of employment upon its employees who are represented by BMWE-Allied Federation. CSXT took such action without having engaged in and exhausted the RLA's required bargaining procedures. Indeed, CSXT has refused to engage in any such bargaining with BMWE-Allied Federation regarding the terms and conditions of employment that it unilaterally imposed. The underlying facts that have given rise to the commencement of this action are set forth below.

3.      The specific action which has given rise to the filing of this action is CSXT's unilateral imposition of an electronic payroll program, coupled with its unilateral imposition of

new conditions of employment requiring its BMWE-Allied Federation-represented employees, without pay and upon pain of discipline up to and including discharge, to clock-in and clock out of work during seven-minute unpaid window periods commencing immediately before and after the start and end of their regularly scheduled workdays. The implementation of its electronic payroll system and the clock-in and clock-out rules, moreover, has resulted in hundreds of payroll discrepancies as well as the imposition of numerous attendance infractions against the BMWE-Allied Federation represented employees. Those payroll discrepancies and attendance infractions may not be correctable because the new electronic payroll system has caused a significant loss, if not total elimination, of data necessary to make such corrections.

4.       BMWE-Allied Federation has demanded that CSXT suspend its use of the electronic payroll system pending resolution of required bargaining between the parties regarding the parameters and application of that system. BMWE-Allied Federation has also communicated to CSXT the numerous flaws relating new electronic payroll system. CSXT has admitted that "some unanticipated system/programming issues have occurred" since the payroll system went into effect, but it has refused to suspend its continued use pending resolution of those flaws, and it has continued refuse to negotiate with BMWE-Allied Federation about the use of the payroll program itself. CSXT's continued use of it new, electronic software program is creating chaos across the CSXT system for BMWE-Allied Federation represented employees, and its refusal to bargain with BMWE-Allied Federation over the implementation of the program in the first place is irreparably undermining the BMWE-Allied Federation's ability to perform its statutory mandate to represent its CSXT-employed members who are themselves harmed by the mess that CSXT unilaterally created and refuses to remedy. The present dispute, therefore, creates an actual, concrete and immediate controversy requiring resolution by this Court.

## STATEMENT OF JURISDICTION AND VENUE

5.      This action arises under the RLA and this Court therefore has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a). This Court also has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

6.      The Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq*., does not deprive this Court of jurisdiction over Plaintiff BMWE-Allied Federation's claims for injunctive relief because this action is brought to enforce the mandatory procedures of the RLA, 45 U.S.C. § 151, *et seq*.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant CSXT operates in this judicial district and division.

## PARTIES

8.      The Brotherhood of Maintenance Way Division of International Brotherhood of Teamsters ("BMWE-IBT") is an unincorporated association. It is a labor organization and a representative within the meaning of the Section 1, Sixth of the RLA, 45 U.C.C. § 151, Sixth. BMWE-IBT is the certified bargaining representative of the maintenance of way craft or class of employees employed by Defendant CSXT. BMWE-IBT is organized into various divisions, local units or also referred to as federations. BMWE-IBT delegates and discharges its RLA exclusive representative duties through these federations. In turn, these federations carry out their representative functions to on behalf of local lodges within the federations' respective geographic jurisdictions and which in turn provide day-to-day representative services to the BMWE-IBT members assigned to them.

9.      Plaintiff BMWE-Allied Federation is one of several BMWE-IBT federations charged with the responsibility of carrying out BMWE-IBT's RLA representative duties and responsibilities. Like its direct parent body, the BMWE-IBT, Plaintiff BMWE-Allied Federation

is an unincorporated labor association. It is a labor organization and a representative within the meaning of the Section 1, Sixth of the RLA, 45 U.C.C. § 151, Sixth. Among the duties and responsibilities assigned to it by BMWE-IBT, BMWE-Allied Federation provides the representation to and for the benefit of CSXT maintenance of way employees. Such representation includes the negotiation and enforcement of those employees' wages, terms and other working conditions while they are employed by and working for CSXT.

10.    Defendant CSXT is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal offices located at 500 Water Street, Jacksonville, Florida, 32202. CSXT is a common carrier by railroad engaged in interstate commerce and is a "carrier" within the meaning of the Railway Labor Act, Section 1, First, 45 U.S.C. § 151, First. CSXT operates an interstate rail system in this judicial system and twenty-two (22) other states, the District of Columbia, and the Canadian provinces of Ontario and Quebec.

## FACTS

11.    CSXT and BMWE, including BMWE-Allied Federation, are parties to a collective bargaining agreement covering the wages, terms and working conditions of CSXT's maintenance of way employees. In 2012, the parties' amended their 1999 collective bargaining agreement, such that the rules and terms contained in the 1999 agreement that remained unchanged carried forward into the 2012 amended agreement. The rules relevant to this dispute are all expressed in the 1999 CBA and were all carried forward into the 2012 agreement; they remain in full force and effect. The parties' collective bargaining agreement is hereafter referred to as the "CBA."

12.    On several occasions since the latter half of 2017, CSXT has communicated its desire to BMWE-Allied Federation to adopt a new payroll program to replace its current system. During those sporadic discussions, CSXT did not provide any specific information to BMWE-

Allied Federation. Even when BMWE-Allied representatives posed specific questions and provided it with hypothetical examples of potential issues regarding the adoption of a new payroll program, CSXT did not provide substantive answers while side-stepping and avoiding other questions altogether.

13.     On or about November 11, 2020, CSXT first informed BMWE-Allied Federation that it was going to implement an electronic payroll program in two days. At that time, CSXT also informed BMWE-Allied Federation that it would simultaneously impose a rule requiring employees represented by BMWE-Allied Federation to clock in during a seven-minute window immediately prior to their scheduled start time, and that it would neither pay the employees for the time spent waiting to clock in nor pay them even after they clocked in but before their regularly scheduled start time commenced. CSXT further informed BMWE-Allied Federation and representatives at that time that it would also impose a rule requiring employees represented by BMWE-Allied Federation to clock out during a seven-minute window period after the end of their work days, and that it would not pay those employees for the time spent waiting to clock out. The rules are hereinafter referred to as the "clock-in rule" and "clock-out rule," respectively. Furthermore, CSXT did not inform BMWE-Allied Federation and its representatives that it would enforce its attendance policies during these clock-in and clock-out window periods, such that any infractions by employees represented by BMWE-Allied Federation could result in discipline up to and including discharge.

14.     On or about November 14, 2020, CSXT implemented its electronic payroll program and it also implemented its clock-in and clock-out rules as described in Paragraph 13, above.

15.     CSXT did not negotiate with, let alone reach agreement with, BMWE-Allied Federation concerning the implementation of the electronic payroll program. Additionally, CSXT

did not negotiate, let alone reach agreement with, the BMWE-Allied Federation concerning the imposition of the clock-in and clock-out rules. The electronic payroll program, as well as the clock-in and clock-out rules directly affect the wages, terms and working conditions of the CSXT employees represented by BMWE-Allied Federation.

16.     The CBA contains explicit work rules that clearly and unambiguously establish that CSXT employees represented by BMWE-Allied Federation shall have a 40-hour work week, with regular assigned workdays each consisting of eight (8) or ten (10) consecutive (straight time) hours, with time "held for duty" treated as part of their workdays. In this regard, Rule 9(a) of the CBA, captioned "Time Allowances," states in relevant part:

> Except as otherwise provided, eight (8) consecutive hours (ten (10) hours for four (4) day gangs), exclusive of meal period, worked or held for duty, shall constitute a day.

Additionally, the CBA contains a rule setting employees' regularly assigned work weeks at forty (40) hours. Specifically, Rule 10 of the CBA, captioned "40 Hour Work Week," provides in relevant part that:

> (a)  General
>
> The carrier will establish for all employees, subject to exceptions contained in these rules, a work week of 40 hours consisting of five days of eight hours each, with two consecutive days off in each seven; the work weeks may be staggered in accordance with carrier's operational requirements; so far as practicable the days off shall be Saturday and Sunday. The foregoing work week rule is subject to the following provisions:
>
> (l)  Production crews (a mobile and mechanized gang consisting of ten (10) or more employees), including locally based supporting BMWE forces whose assignment is associated with that of a production crew to the extent that a different work week of rest days for such crews, on the one hand, and such supporting forces, on the other, would delay the work or otherwise interfere with its orderly progress, may be established consisting of five (5) eight (8) hour days followed by two (2) consecutive rest days. One of those rest days shall be either a Saturday or a Sunday, and both weekend days shall be designated as rest days here there is no need for weekend work.

> (m)  Production crews, and local supporting forces, as defined above, may be established consisting of four (4) ten (10) hour days, followed by three (3) consecutive rest days, in lieu of five (5) eight (8) hour days. The rest days of such compressed workweek will include either Saturday or Sunday.  However, where there is no carrier need for weekend work, production crews will be given both weekend days as rest days.

Furthermore, Rule 11 of the CBA, captained "Overtime," requires the payment of overtime to employees who work or are held for duty beyond their regularly scheduled eight (8) or ten (10) work days, and beyond their regularly scheduled forty (40) hour work weeks. Rule 11 clearly and unambiguously provides that overtime is calculated on the actual minute basis for time worked preceding or following and continuing with a regularly assigned work period. Rule 11 also clearly and unambiguously provides that the starting time of an employee's work period, except with respect to temporary emergency assignments, is the time he or she commences work or is "required to report" for duty, i.e., work. Thus, Rule 11 provides in relevant part:

> (a)  Time worked preceding or following and continuing with a regularly assigned work period shall be computed on the actual minute basis and paid for at time and one-half rates, with double time computed on the actual minute basis after sixteen (16) continuous hours of work in any 24 hour period computed from the starting time of the employee's regular shift. . . .
>
> (b)  The starting time of the work period of other than regularly assigned employees temporarily brought into service in emergencies, will be considered as of the time they commence work or are required to report.

Furthermore, Rule 3, captioned "Selection of Positions," deals with job postings and bidding procedures. Rule 3 provides in relevant part:

> Section 1. Assignment to position
>
> In the assignment of employees to positions under this Agreement, seniority shall govern. The word "seniority" as used in this Rules means, first seniority in the class in which the assignment is to be made, and thereafter, in the lower classes, respectively, in the same group in the order in which they appear on the seniority district roster.

Section 3.  Advertisement and award.

(a)  All positions and vacancies will be advertised within thirty (30) days previous to or within twenty (20) days following the dates they occur. The advertisement shall show the position, title, rate of pay, headquarters, tour of duty, rest days and designated meal period.

17.     Consistent with the CBA rules identified in Paragraph 16, above, prior to implementing its electronic payroll program, employees represented by BMWE-Allied Federation were not required by contract to report to work before the start of their work periods and they were not compelled by contract to be held for duty following the completion of their work periods unless they were assigned to work overtime. As a result, and for this reason, CSXT employees represented by BMWE-Allied Federation were neither required by contract to clock in before, nor clock out after, their scheduled workdays. Instead, those employees would arrive and report for duty beginning at their designated start times and leave work at their scheduled quitting times. Additionally, prior to implementing its electronic payroll program and its clock-in and clock-out rules, CSXT employees represented by BMWE-Allied Federation were neither subjected to nor held accountable under CSXT's attendance rules for periods prior to the commencement of their regularly scheduled work day(s) and following the completion of their regularly scheduled work day(s); as a result, they were not subjected to CSXT attendance policy infractions that could lead to discipline up to and including discharge for any periods of time prior to and after their scheduled work days.

18.     CSXT's newly imposed electronic payroll and clock-in and clock-out rules are antithetical to, and effectively abrogate, the express terms and conditions set forth in the CBA as identified in Paragraph 16, above. CSXT unilaterally imposed these rules without articulating any arguable justification that such rules are consistent with or permitted by the CBA; any after-the-fact justifications claimed by it now are and would be frivolous and clearly insubstantial. In its

zeal and its haste to implement programs and rules that exclusively benefit itself and effectively abrogate existing, express CBA work rule protections afforded to the CSXT employees represented by BMWE-Allied Federation, CSXT unlawfully circumvented its RLA-mandated status quo and bargaining obligations.

19.     CSXT's unilateral implementation of its electronic payroll system has resulted in hundreds of payroll discrepancies as well as the imposition of numerous attendance infractions against the BMWE-Allied Federation represented employees. Those payroll discrepancies and attendance infractions may not be correctable because the new system has caused a significant loss, if not total elimination, of data necessary to make such corrections. Although BMWE-Allied Federation has brought these matters to the attention of CSXT and has requested that CSXT suspend further use of the payroll system pending bargaining between the parties and pending verifiable resolution of the system's many flaws, CSXT has refused to bargain with BMWE-Allied Federation. CSXT likewise has refused to suspend the continued use of the payroll program and its clock-in and clock-out rules.

### FIRST CAUSE OF ACTION
_Violation of RLA Sections 6 and 7, 45 U.S.C. §§ 156, 152, Seventh_

20.     BMWE-Allied Federation incorporates by reference as if fully set forth herein each and every allegations of Paragraphs 1 through 19, above.

21.     Section 2, Seventh of the RLA, 45 U.S.C. § 152, Seventh, provides, "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in Section 156 of this title." Section 6 of the RLA, 45 U.S.C. § 156, provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in the agreements affecting rates of pay, rules or working conditions, and the time and place for the beginning of conference between the representatives of the

parties interested in such intended changes shall be agreed upon within ten days after receipt of such notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended notice of such change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

22.     Prior to and following its unilateral imposition of its electronic payroll program and its clock-in and clock-out rules, CSXT has never served BMWE-IBT or BMWE-Allied Federation with a notice of intended change in their agreements affecting rates of pay, rules or working conditions, as required by RLA Section 6, 45 U.S.C. § 156.

23.     CSXT's unilateral implementation of its electronic payroll program and its clock-in and clock-out rules without having followed and adhered to the procedures required by RLA Section 6, 45 U.S.C. § 156, constitutes an abrogation of explicit and unambiguous work rule protections contained in the CBA that are afforded to its employees who are represented by BMWE-Allied Federation. CSXT's unilateral implementation of its electronic payroll program and its clock-in and clock-out rules has thereby "change[d] the . . . rules [and] working conditions of its [maintenance of way] employees [represented by BMWE-Allied Federation], as a class, as embodied in" the CBA not "in the manner prescribed in such agreement[] or in Section 156" of the RLA. CSXT's actions, therefore, violate RLA Section 2, Seventh, 45 U.S.C. § 152, Seventh.

### SECOND CAUSE OF ACTION
#### *Violation of RLA Section 2, First, 45 U.S.C. § 152, First*

24.     BMWE-Allied Federation incorporates by reference as if fully set forth herein each and every allegation of Paragraphs 1 through 23.

25.     Section 2, First of the RLA, 45 U.S.C. § 152, First, provides: "It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and

maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes,, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption of commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof."

26.     By unilaterally imposing its electronic payroll program and unilaterally imposed its clock-in and clock out-rules, without bargaining with BMWE-Allied Federation; refusing BMWE-Allied Federations request to engage in such bargaining; and refusing to suspend its unilaterally imposed electronic payroll program and its clock-in and clock-out rules pending the outcome of such negotiations with BMWE-Allied Federation, CSXT has failed to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions. CSXT's failure to do so violates Section 2, First of the RLA, 45 U.S.C. § 152, First.

### THIRD CAUSE OF ACTION
Irreparable Injury

27.     BMWE-Allied Federation incorporates by reference as if fully set forth herein each and every allegation of Paragraphs 1 through 26.

28.     CSXT's unilateral imposition of its electronic payroll program and its clock-in and clock-out rules, along with its refusal to negotiate with BMWE-Allied Federation over that program and those rules and its refusal to suspend the continued use of that program and those rules pending the completion of such negotiations with BMWE-Allied Federation, have wreaked havoc on the CSXT employees represented by BMWE-Allied Federation. Those employees are now being forced to report to and be held over for duty outside their regularly scheduled workdays without pay and with risk of incurring discipline up to and including discharge if they fail to comply with a program that CSXT itself has acknowledged is programmatically flawed.

29.     CSXT's refusal to negotiate with BMWE-Allied Federation over the implementation of the electronic payroll program and the clock-in and clock-out rules also has the effect of undermining the confidence of the CSXT employees represented by BMWE-Allied Federation in the BMWE-Allied Federation's ability to effectively and adequately protect and represent them, all of which subjects BMWE-Allied Federation to the loss of its reputation as well as the potential loss of its status as those employees' certified bargaining representative.

30.     The injury being suffered by the public, BMWE-Allied Federation and the CSXT employees represented by BMWE-Allied Federation, is irreparable and continuing; the harm caused by such injury cannot be recovered in an action at law or in administrative or contractual proceedings.

31.     CSXT's violations of the status quo established under RLA Section 6, 45 U.S.C. § 156, and its refusal to bargain with its maintenance of way employees' certified representative, BMWE-IBT and its designated agent, BMWE-Allied Federation, undermine the statutory purpose of the RLA to prevent disruptions to interstate commerce through bargaining in conference between the carrier (CSXT) and its employees. This harm to the statutory procedures of the RLA constitutes irreparable injury or, alternatively, may be remedied by the Court without the traditional showing of irreparable injury.

32.     CSXT's conduct is contrary to the public interest in stable labor relations and the maintenance of agreements, as well as their orderly change through the RLA's procedures.

33.     BMWE-Allied Federation and the CSXT employees it represents are without an adequate remedy at law; BMWE-Allied Federation and the CSXT employees it represents will suffer serious, substantial and irreparable injury unless CSXT's unlawful conduct is enjoined.  The

public interest favoring labor relations stability in rail transportation requires that injunctive relief issue.

34.     CSXT will not be injured by granted injunctive relief requiring it to comply with the Act, such that the balance of harm in not granting injunctive relief rests exclusively with the public, BMWE-Allied Federation and the CSXT employees it represents.

## PRAYER FOR RELIEF

**WHEREFORE**, BMWE-Allied Federation respectfully requests that the Court:

A.     Declare that CSXT's unilateral imposition of its electronic payroll program and the clock-in and clock-out rules violates Sections 2, First, 2, Seventh and 6 of the RLA, 45 U.S.C. §§ 152, First, 152, Seventh, and 156;

B.     Declare that CSXT's unilateral imposition of its electronic payroll program and the clock-in and clock-out rules constitute a repudiation of express, agreed-upon work rule provisions contained in the CBA that protect its maintenance of way employees represented by BMWE-Allied Federation from being compelled to clock in and clock out of work during periods before and after their regularly scheduled workdays without pay and also protect them from being subjected to the risk of discipline up to and including discharge for failing to adhere to that unilaterally imposed program and those unilaterally imposed rules;

C.     Issue a preliminary injunction ordering CSXT to restore the *status quo ante* by suspending the operation and use of its electronic payroll program and its clock-in and clock-out rules until and unless it engages in and completes the bargaining procedures required by RLA Section 6, 45 U.S.C. § 156;

D.     Permanently enjoin CSXT from engaging in the violations of the RLA as set forth herein;

E.      Order CSXT, for a period of ninety (90) consecutive days immediately following the entry of its Order in this action, copies of such Order at each of CSXT's facilities and locations where its maintenance of way employees represented by BMWE-Allied Federation regularly frequent and/or work;

F.      Order CSXT to pay BMWE-Allied Federation the costs and reasonable attorneys' fees incurred by BMWE-Allied Federation in prosecuting this action; and

G.      Grant BMWE-Allied Federation such other and further relief as the Court deems equitable and just.

Dated: January 8, 2021.                    Respectfully submitted,


/s/ David O'Brien Suetholz
_____
David O'Brien Suetholz
Branstetter Stranch & Jennings PLLC
515 Park Avenue
Louisville, KY 40208
Tel: (502) 636-4333
Fax: (502) 636-4342
davids@bsjfirm.com

Edward M. Gleason, Jr.
*(motion pro hac vice pending)*
Branstetter Stranch & Jennings PLLC
1101 30th Street, NW, Suite 500
Washington, DC 20007
Tel.: (703) 608-7880
edg@bsjfirm.com

Attorneys for Plaintiff BMWE-Allied Federation

## VERIFICATION

I, Dennis R. Albers, am the elected General Chairman of the Brotherhood of Maintenance of Way Employees Allied Federation ("BMWE-Allied Federation") and am duly authorized to sign this Verification on behalf of BMWE-Allied Federation. In my capacity as General Chairman of BMWE-Allied Federation and based on my own personal knowledge, I am familiar with the facts alleged in the foregoing Complaint against CSX Transportation, Inc. and pursuant to 28 U.S. § 1746 verify and declare under penalty of perjury that the facts contained herein are true and correct.

Dated: 1-8-2021

Dennis R. Albers, General Chairman
BMWE-Allied Federation